McGREGOR W. SCOTT
United States Attorney
MIRIAM R. HINMAN
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

**FILED**

JAN 1 4 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

Attorneys for Plaintiff
United States of America

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:18-CR-0149-JAM |
| Plaintiff, | PLEA AGREEMENT |
| v. | DATE:    JANUARY 7, 2020 |
| RAYMOND SU, | TIME:    9:15 AM |
| Defendant. | COURT:  Hon. JOHN A. MENDEZ |

## I.    **INTRODUCTION**

### A.    **Scope of Agreement.**

The superseding indictment in this case charges the defendant with violations of 18 U.S.C. § 371 – conspiracy ("Count One") and 18 U.S.C. § 1708 – possession of stolen mail ("Count Six"). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B.    **Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances

PLEA AGREEMENT                                           1

concerning the criminal activities of defendant, including activities which may not have been charged in the superseding indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.    DEFENDANT'S OBLIGATIONS

### A.    Guilty Plea.

The defendant will plead guilty to Count One, a violation of 18 U.S.C. § 371 – conspiracy. The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea(s) should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B.    Restitution.

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. Defendant agrees that his conduct is governed by the Mandatory Victim Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims affected by this offense, including, but not limited to, the victims covered in the factual basis,

PLEA AGREEMENT                    2

1    victims covered in those counts to be dismissed as part of the plea agreement pursuant to 18 U.S.C.

2    § 3663A(a)(3), and other victims as a result of the defendant's conduct for the offenses charged and

3    reasonably foreseeable conduct of coconspirators in furtherance of the conspiracy from the periods of

4    April 2018 through July 2018.  The amount of restitution will be between approximately $750 and

5    $7,000.

6          Defendant further agrees that he will not seek to discharge any restitution obligation or any part

7    of such obligation in any bankruptcy proceeding.

8          Payment of restitution shall be by cashier's or certified check made payable to the Clerk of the

9    Court.

10         **C.**    **Fine.**

11         The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a

12   fine, and that no fine should be imposed.  The defendant understands that it is his burden to affirmatively

13   prove that he is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury

14   to the Probation Officer and the government in advance of the issuance of the draft Presentence

15   Investigation Report, along with supporting documentation.  The government retains the right to oppose

16   the waiver of a fine.  If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered

17   by the Court, up to the statutory maximum fine for the defendant's offense.

18         **D.**    **Special Assessment.**

19         The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering

20   a check or money order payable to the United States District Court to the United States Probation Office

21   immediately before the sentencing hearing.  The defendant understands that this plea agreement is

22   voidable at the option of the government if he fails to pay the assessment prior to that hearing.

23         **E.**    **Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).**

24         If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw

25   his plea, this plea agreement is voidable at the option of the government.  If the government elects to

26   void the agreement based on the defendant's violation, the government will no longer be bound by its

27   representations to the defendant concerning the limits on criminal prosecution and sentencing as set

28   forth herein.  A defendant violates the plea agreement by committing any crime or providing or

PLEA AGREEMENT                              3

1  procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in
2  any litigation or sentencing process in this case, or engages in any post-plea conduct constituting
3  obstruction of justice.  Varying from stipulated Guidelines application or agreements regarding
4  arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through
5  counsel, also constitutes a violation of the plea agreement.  The government also shall have the right (1)
6  to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts
7  that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would
8  otherwise be barred by this plea agreement.  The defendant shall thereafter be subject to prosecution for
9  any federal criminal violation of which the government has knowledge.  The decision to pursue any or
10  all of these options is solely in the discretion of the United States Attorney's Office.

11  By signing this plea agreement, the defendant agrees to waive any objections, motions, and
12  defenses that the defendant might have to the government's decision.  Any prosecutions that are not
13  time-barred by the applicable statute of limitations as of the date of this plea agreement may be
14  commenced in accordance with this paragraph, notwithstanding the expiration of the statute of
15  limitations between the signing of this plea agreement and the commencement of any such prosecutions.
16  The defendant agrees not to raise any objections based on the passage of time with respect to such
17  counts including, but not limited to, any statutes of limitation or any objections based on the Speedy
18  Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as
19  of the date of this plea agreement.  The determination of whether the defendant has violated the plea
20  agreement will be under a probable cause standard.

21  In addition, (1) all statements made by the defendant to the government or other designated law
22  enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal,
23  whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or
24  administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no
25  claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal
26  Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by
27  the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.
28  By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

PLEA AGREEMENT                    4

**F.     Forfeiture.**

The defendant agrees to forfeit to the United States voluntarily and immediately all of his right title and interest to any and all assets subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). Those assets include, but are not limited to, the assets listed in Exhibit B.

The defendant agrees that the listed asset(s) constitute property that is the proceeds of a violation of 18 U.S.C. § 371 – Conspiracy to violate 18 U.S.C. §§ 1029, 1708.

The defendant agrees to fully assist the government in the forfeiture of the listed assets and to take whatever steps are necessary to pass clear title to the United States. The defendant shall not sell, transfer, convey, or otherwise dispose of any of his asset(s), including but not limited to, the above-listed asset(s).

The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. The defendant agrees to waive his right to notice of any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a claim in that forfeiture proceeding.

The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of assets. The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets in any proceeding. The defendant agrees to waive any jeopardy defense, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States, the State of California or its subdivisions.

The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defenses or defects that may pertain to the forfeiture.

**G.     Asset Disclosure.**

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if he fails to complete truthfully and provide the described

1  documentation to the United States Attorney's office within the allotted time, he will be considered in
2  violation of the agreement, and the government shall be entitled to the remedies set forth in section II.E
3  above.

4  ### III.     THE GOVERNMENT'S OBLIGATIONS

5  **A.     Dismissals/Other Charges.**

6       The government agrees to move, at the time of sentencing, to dismiss without prejudice the
7  remaining counts in the pending superseding indictment. The government also agrees not to reinstate
8  any dismissed count except if this agreement is voided as set forth herein, or as provided in paragraphs
9  II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), VI.B (Stipulations Affecting
10  Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein.

11  **B.     Recommendations.**

12       1.     Incarceration Range.

13       The government will recommend that the defendant be sentenced to the low end of the
14  applicable guideline range as determined by the Court.

15       2.     Acceptance of Responsibility.

16       The government will recommend a two-level reduction (if the offense level is less than
17  16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if
18  the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. §
19  3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of
20  the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging
21  in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the
22  preparation of the pre-sentence report or during the sentencing proceeding.

23  **C.     Use of Information for Sentencing.**

24       The government is free to provide full and accurate information to the Court and Probation,
25  including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate
26  statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also
27  understands and agrees that nothing in this Plea Agreement bars the government from defending on
28  appeal or collateral review any sentence that the Court may impose.

PLEA AGREEMENT                                6

## IV.    ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, 18 U.S.C. § 371 – conspiracy:

- First, beginning in or about April 2018, and ending on or about July 2018, there was an agreement between two or more persons to commit violations of 18 U.S.C. § 1708 – Theft or receipt of stolen mail matter;

- Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

- Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

The superseding indictment alleges that an object of the conspiracy was to violate 18 U.S.C. § 1708.  The elements of the offense of possession of stolen mail under 18 U.S.C. § 1708 are:

- First, a letter, package, or mail was stolen from a post office, mail receptacle, or other authorized depository for mail matter;

- Second, the defendant possessed the letter, package, mail, or an article or thing contained therein; and

- Third, the defendant knew that the letter, package, or mail was stolen.

The defendant fully understands the nature and elements of the crimes charged in the superseding indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V.    MAXIMUM SENTENCE

### A.    Maximum Penalty.

The maximum sentence that the Court can impose is 5 years of incarceration, a fine of $250,000, a 3 year period of supervised release and a special assessment of $100.  By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct.  The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count(s) to which he is pleading guilty.  The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any

restitution imposed by the Court.

**B.    Violations of Supervised Release.**

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 2 additional years imprisonment.

## VI.    SENTENCING DETERMINATION

**A.    Statutory Authority.**

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B.    Stipulations Affecting Guideline Calculation.**

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

1.    Base Offense Level:  6 (U.S.S.G. § 2B1.1)

2.    Specific offense characteristic for loss amount (§ 2B1.1(b)(1)):  Between +2 and +6. The defendant may argue that that the increase for loss amount should be limited to +2. The government may argue that it should be +6.

3.    The offense involved 10 or more victims: +2 (§ 2B1.1(b)(2)(A))

4.    Trafficking in unauthorized access devices ((§ 2B1.1(b)(11)):  The defendant may argue that this specific offense characteristic does not apply.  The government may argue that it does apply, leading to an increase of +2.

5.    Abuse of a position of trust (§ 3B1.3):  The defendant may argue that this enhancement does not apply.  The government may argue that it does apply, leading to an increase of +2.

PLEA AGREEMENT                                      8

6.    Estimated Adjusted Offense Level, if the Court accepts the government's positions on guidelines as stated above:  18

7.    Acceptance of Responsibility:  See paragraph III.B.2 above

8.    Criminal History:  The parties estimate, but do not stipulate, that the defendant's criminal history category will be I.

9.    Estimated Sentencing Range, if the Court accepts the government's positions on guidelines as stated above:  18-24 months (The defendant understands that if the criminal history category differs from the parties' estimate, his Guidelines sentencing range may differ from that set forth here.)

10.    Departures or Other Enhancements or Reductions:

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for a departure or an adjustment based on the defendant's post-plea obstruction of justice (§3C1.1).  Both parties agree not to move for, or argue in support of, any departure from the Sentencing Guidelines.

The defendant is free to recommend to the Court whatever sentence he believes is appropriate under 18 U.S.C. § 3553(a).  The government is obligated to recommend the low end of the guideline range as determined by the Court.

## VII.    WAIVERS

### A.    Waiver of Constitutional Rights.

The defendant understands that by pleading guilty he is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B.    Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence.  The defendant agrees as part of his plea(s), however, to give up the right to

PLEA AGREEMENT                9

1  appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not
2  exceed the statutory maximum(s) for the offense(s) to which he is pleading guilty.  The defendant
3  understands that this waiver includes, but is not limited to, any and all constitutional and/or legal
4  challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which
5  defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts
6  attached to this agreement is insufficient to support the defendant's plea of guilty.  The defendant
7  specifically gives up the right to appeal any order of restitution the Court may impose.

8  Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if
9  one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the
10  statutory maximum; and/or (2) the government appeals the sentence in the case.  The defendant
11  understands that these circumstances occur infrequently and that in almost all cases this Agreement
12  constitutes a complete waiver of all appellate rights.

13  In addition, regardless of the sentence the defendant receives, the defendant also gives up any
14  right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any
15  aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

16  Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever
17  attempts to vacate his plea(s), dismiss the underlying charges, or modify or set aside his sentence on any
18  of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.E
19  herein.

20  **C.**    **Waiver of Attorneys' Fees and Costs.**

21  The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-
22  119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the
23  investigation and prosecution of all charges in the above-captioned matter and of any related allegations
24  (including without limitation any charges to be dismissed pursuant to this plea agreement and any
25  charges previously dismissed).

26  **D.**    **Impact of Plea on Defendant's Immigration Status.**

27  Defendant recognizes that pleading guilty may have consequences with respect to his
28  immigration status if he is not a citizen of the United States.  Under federal law, a broad range of crimes

PLEA AGREEMENT                                      10

are removable offenses, including offense(s) to which the defendant is pleading guilty. The defendant and his counsel have discussed the fact that the charge to which the defendant is pleading guilty is an aggravated felony, or a crime that is likely to be determined to be an aggravated felony under 8 USC § 1101(a)(43), and that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, it is virtually certain that defendant will be removed if he is not a U.S. citizen. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

## VIII.    ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX.    APPROVALS AND SIGNATURES

### A.    Defense Counsel.

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 9 Jan 2020

LINDA PARISI
Attorney for Defendant

### B.    Defendant:

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my

PLEA AGREEMENT                                    11

1   case. No other promises or inducements have been made to me, other than those contained in this plea

2   agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement.

3   Finally, I am satisfied with the representation of my attorney in this case.

4   Dated: Jan 9, 2020

5   _____
    RAYMOND SU
    Defendant

6

7

8   **C.      Attorney for United States:**

9   I accept and agree to this plea agreement on behalf of the government.

10  Dated: 1/14/2020                            McGREGOR W. SCOTT
                                                United States Attorney

11

12  _____
    MIRIAM R. HINMAN
13  Assistant United States Attorney

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT                          12

EXHIBIT "A"

Factual Basis for Plea(s)

Domingo Ene, Joshua Hopoi, and Raymond Su conspired to use their positions as employees of Envoy at Sacramento International Airport to steal United States Mail, including cash and gift cards, beginning by at least April 2018 and continuing through July 2018. Their positions involved handling baggage and United States Mail carried by American Airlines. They brought mail from arriving flights to the airport post office, where they unloaded it. They also loaded mail from the airport post office onto departing flights. During the loading and unloading process, they rifled through mail and looked for greeting card envelopes so that they could find cash and gift cards. Ene, Hopoi, and Su worked together to steal the mail, to set up mail carts to block the view of their theft, and to split up the cash and gift cards that they stole from the mail. Many mail items and gift cards that Ene, Hopoi, and Su stole were being sent from California to other states or from other states to California.

Postal inspectors conducted searches at the airport and the defendants' homes on July 17, 2018. The search of Su's airport locker yielded two stolen mail items that had been addressed to Alabama and postmarked the day before, as well as 7 gift cards. At Su's house, inspectors seized 8 additional gift cards. At Hopoi's house, inspectors found U.S. mail items addressed to other people and 47 gift cards. Hopoi's backpack contained an Envoy shirt with approximately 29 stolen envelopes still inside. At Ene's house, inspectors found 6 gift cards.

On Su's phone, investigators found messages between Su and at least eight contacts about dozens of gift cards that he had available for sale. He wrote that they were "Not legitimate cards" and discussed that the prices were "30 off" because they were stolen goods.

In Mirandized interviews, Hopoi and Ene confessed to stealing mail from the airport, and they admitted getting cash and gift cards from the mail. Hopoi said that Ene introduced the other employees to stealing mail. Hopoi said that whoever opened the mail would share with the others, and sometimes they would sell each other stolen gift cards. Hopoi admitted giving stolen gift cards to his brother, and Ene admitted giving stolen gift cards to his girlfriend. Hopoi and Ene also admitted that they rifled through checked baggage. Ene admitted taking a gun from baggage, and Hopoi said that he saw Ene take a gun from baggage. Su's girlfriend said that Su gave her gift cards.

PLEA AGREEMENT                           A-1

1

2     As a result of the conspiracy, Ene, Hopoi, and Su obtained at least 95 stolen gift cards.  That

3 includes two gift cards that Ene used at Amazon and Walmart, a gift card that Hopoi used at Target, 7

4 gift cards found in Su's airport locker, 8 gift cards found at Su's house, 47 gift cards found at Hopoi's

5 house, 6 gift cards found at Ene's house, and 9 gift cards pictured on Su's phone.  Hopoi and Su

6 discussed approximately 60 gift cards in other messages on their phones, without the gift card numbers.

7 It is possible that some of those gift cards are duplicates of seized or pictured gift cards, but at least 15

8 cards are not duplicates, because they are for different stores.

9     Ene, Hopoi, and Su also stole cash from the mail.  The total amount of cash that Ene, Hopoi, and

10 Su stole between April and July 2018 is unknown, but it was at least $3,295.

11

12     I, Raymond Su, have carefully reviewed the above Exhibit A: Factual Basis for Plea with my

13 attorney, and I understand its contents in full.  As far as my own conduct is concerned, the facts

14 described above are true, and I adopt this Factual Basis for Plea as my own true statement.

15     Dated:  9 Jan 2020

16                                                              Raymond Su, Defendant

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit "B"

Assets Subject to Forfeiture

1.      Apple Watch with serial number SFHLWQ1J8J5X1

2.      The following gift cards:

| Retailer | Number |
| --- | --- |
| Forever 21 | 6363 1404  1420 6807 |
| Cinemark Supersaver | 80402 3889 8411P |
| Cinemark Supersaver | 80402 3889 8412P |
| Aero Rewards card | 8405 1397 1691 39 |
| Barnes & Noble | 5045 0784 4165 612 |
| Pier One | 6006 4916 8151 6179 508 |
| Amazon | 6115 3686 1787 2998 |
| Lucille's | 6000 9148 2567 3162 |
| Starbucks | 6020 8828 1855 3794 |
| Starbucks | 6087 7953 1936 3438 |
| Paragary's | 6035 7101 3210 0227 687 |
| Cold Stone | 6090 9901 2340 9279 |
| Jamba Juice | 1502 1033 9151 99 |
| Total Wine | 6032 6103 6661 9075 |
| Baskin Robbins | 6093 3528 8706 3189 |
| McCormick/Schmick | 6097 2381 6255 4033 |
| Amazon | 6144 3946 4379 0498 |
| Bath & Body Works | 6219 8735 2713 3585 |
| Petco | 6145 7159 6357 3225 |
| Ulta | 6145 2262 2679 4879 |
| TJ Maxx | 799 36668746 000633 7665 6986 35928 |
| Forever 21 | 799 36624091 000633 7666 6643 80234 |
| Victoria Secret | 6006 4959 2680 6264 445 |
| Visa Gift card | 4847 1866 2127 4394 |
| Visa Gift card | 4847 1846 1420 4270 |
| Xbox | 0637 4632 6536 05373 |
| Starbucks | 6140 7173 3646 6610 |
| Panera | 6006 4959 3952 8847 827 |
| xbox | 6374 6300 7465 4186 |
| Ihop | 3104 3800 0013 8178 857 |
| Ihop | 3104 3800 0013 8178 840 |
| Famous Daves | 603628 88329 1962566859 |
| Total Wine | 6032 6104 2102 3610 |
| Barnes & Noble | 6277 1569 4431 3768 75 |
| Subway | 6299 4414 1354 9513 |
| Starbucks | 6118 7809 7579 7340 |
| Logans | 6006 4913 1412 0319 548 |
| Darden | 6137 3775 1127 6096 |
| Olive Garden | 6129 0604 8337 2195 |

| | |
|---|---|
| Home Depot | 9806 146090 943554 9997415 |
| Olive Garden | 6145 3648 4824 0657 |
| Macy's | 9531 1131 1671 6240 |
| Macy's | 9381 7386 4188 611 |
| Gap | 6003 8752 3359 6856 |
| Gap | 6003 8752 3359 6864 |
| Fanzz | 6273 2550 4312 7726 |
| Walmart | 4852 4643 2595 5838 |
| Chuck E Cheese | 6219 8752 7242 0638 |
| Kohl's | 6393 05033 28956 02206 |
| Cold Stone | 6130 2101 8197 0535 |
| Sephora | 6136 4214 6029 7240 |
| Target | 041 217 351 240 545 |
| Chuck E Cheese | 603571 042161 2128164 |
| Jamba Juice | 3700 9000 5348 74 |
| Starbucks | 6152 0789 8083 6415 |
| Bed Bath & Beyond | 6126 3094 0340 9823 |
| Target | 5166 1242 7842 1943 |
| Visa/Target | 4250 9720 7417 0928 |
| Walmart Visa | 4852 4643 3169 9610 |
| Whole Foods | 6362 6420 1584 3517 |
| Whole Foods | 6362 6402 4101 3525 |
| Auto Zone | 6112 5787 8887 2917 |
| Starbucks | 6083 4187 6322 9020 |
| 7-11 store | 6114 9697 7982 9843 |
| Mastercard | 5165 7800 5517 3535 |
| L & L Hawaiian BBQ | 6085 9415 5902 9530 |
| Target | 041 218 391 267 241 |
| Walmart | 4852 4641 8562 5265 |

PLEA AGREEMENT                    B-2